(No. 56593.—

McLEAN TRUCKING COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (John Schackney, Appellee).

*Opinion filed May 18, 1983.*

214

Musschoot, Womack & Galich, of Chicago (Andrew A. Galich and Peter Fedij, of counsel), for appellant.

Perry M. Laks, of Laks & Forman, of Chicago, for appellee.

JUSTICE WARD delivered the opinion of the court:

On December 18, 1979, John Schackney filed an application for adjustment of claim alleging that he sustained a heart attack on July 25, 1979, which arose out of and in the course of his employment by the respondent, McLean Trucking Company (McLean Trucking). On October 7, 1980, an arbitrator decided that the claimant did not sustain accidental injuries arising out of and in the course of employment on the date alleged. After taking additional evidence, the Industrial Commission granted the claimant's unopposed motion to amend the application for adjustment of claim by substituting July 23, 1979, as the date of the accident. The Commission later found that Schackney had sustained an accidental injury arising out of and in the course of employment on July 23, 1979. The Commission awarded temporary total disability, reimbursement for medical expenses, compensation "for treatment, instruction and training necessary for *** physical, mental and vocational rehabilitation" as

provided in section 8(a) of the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(a)), and interest as provided in section 19(n) of the Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.19(n)). The Industrial Commission remanded to the arbitrator "for further proceedings consistent with this Decision." On April 1, 1982, the circuit court of Cook County set aside that portion of the finding of the Industrial Commission pertaining to the payment of interest, but confirmed the balance of the finding. The employer brought this direct appeal under our Rule 302(a) (73 Ill. 2d R. 302(a)).

McLean Trucking complains on this appeal that the Commission erred in allowing Schackney to amend the application, that the Commission's finding that the claimant's injuries arose out of and in the course of employment was contrary to the manifest weight of the evidence, and that the Commission should not have awarded vocational and rehabilitative training in the absence of evidence of the need for rehabilitation and before it was determined whether the claimant's disability is permanent.

At the hearing before the arbitrator, the 59-year-old claimant testified that he had been employed by the respondent as a truck driver for 27 years. Prior to July of 1979, he had never missed a day of work, had never had a work-related accident, and was in good health. His daily duties included lifting approximately 400 cartons and placing them on a conveyor belt leading from his truck. Each carton weighed between 80 and 100 pounds. His formal education ended at the completion of seventh grade.

He said that on July 23, 1979, his first day of work following a three-week vacation, he unloaded 485 cartons, each weighing from 80 to 110 pounds, between 8:30 a.m. and 2 p.m. Afterwards, he experienced sharp pains in his chest and right arm. He reported the pains

to his dispatcher, who instructed him to drop the empty trailer at a location two or three miles away. Following his return to the terminal at 4:30 p.m., he again notified the dispatcher of his pain and went home. The claimant rested at home the next day but he was still experiencing chest pains when he arrived for work on July 25, 1979. He hooked up a trailer and made a three-mile trip but did not have to unload the trailer. He returned to the terminal and told the dispatcher that he was not feeling well and was going home. His wife drove him to South Suburban Hospital, where his condition was diagnosed as an acute myocardial infarction. He was in an intensive-care unit for five days. He was released from the hospital on August 8, 1979, but was hospitalized again from August 26, 1979, to September 8, 1979, because of a recurrence of chest pains. On September 8, he was admitted to Presbyterian – St. Luke's Hospital, underwent a cardiac catheterization, and was released on September 25, 1979. He testified that he suffers from extreme fatigue.

South Suburban Hospital's medical record, which shows an admission date of July 25, 1979, notes:

"chest pain for the past 2-3 days c some diaphorisis, is not aware of past cardiac hy."

However, the case history completed by a Dr. Purdy on July 31, 1979, notes "complaints of chest pain one day prior to admission *** denies any past history of heart disease or chest pains. He has had no serious illnesses. This is his first hospital admission." A consultant's report completed by Dr. W. Padamadan, a cardiologist, and dated July 25, 1979, contains the finding that Schackney complained of chest pain "which started yesterday."

Dr. Joseph Muenster treated the claimant during his hospitalization at Presbyterian – St. Luke's. A discharge summary signed by Dr. Muenster, but apparently dictated by a Dr. T. Bleck on September 21, 1979, states:

"He was in his usual state of good health until 7/25/79. *** The pain lasted for 5-10 minutes. It was brought on while he was lifting heavy cartons."

A "patient data base nursing assessment" completed the day Schackney was admitted to Presbyterian–St. Luke's noted:

"the first chest pain came 7/23/79, lasted longer than 1 day *** had 1st heart attack on 7/23/79."

Dr. Nathaniel D. Greenberg, an internist, testified for the claimant. After examining Schackney on March 4, 1980, he was of the opinion that there was a direct causal connection between the claimant's work activities on July 23 and July 25 and his myocardial infarction. Dr. William B. Buckingham examined the claimant on March 4, 1980, at the request of the employer, and declared there was not a causal connection. Both doctors testified that the claimant's condition is permanent and that he would not be able to drive a truck again or perform any physically demanding labor.

There was no error by the Commission's allowing Schackney to amend his claim by changing the date of the accident. The holding in *Lake State Engineering Co. v. Industrial Com.* (1964), 31 Ill. 2d 440, which the respondent cites, is not relevant. The decision there concerned the statute of limitations and whether the employee's claim was timely filed. It did not concern whether, as here, an employee may amend his application for adjustment of claim to conform to the evidence adduced at the hearings before the arbitrator and the Industrial Commission.

"In pleadings under a compensation act, calling things by wrong names, or bringing a petition under a wrong title, or making other harmless mistakes as to details such as dates, are immaterial if the intention of the pleading is clear." (3 A. Larson, Workmen's Compensation sec. 77A.42 (1983).)

Larson goes on to state:

"As to variance between pleadings and proof, wide

latitude is allowed." (3 A. Larson, Workmen's Compensation sec. 77A.45 (1983).)

We consider that the Commission's finding that the "Respondent had ample opportunity to meet the change [in date of the accident], that the change did not require additional evidence, and that it was simply a motion to amend the pleadings to conform to the evidence already in the record" was not against the manifest weight of the evidence. At the hearing on the same issue, the circuit court said:

"I think anybody reading the testimony of the Petitioner would agree that he was talking about July 23rd. It wouldn't make any sense to talk about any other date."

It is clear from the record that the employer was not prejudiced by the amendment. Too, any complaint McLean Trucking has to the amendment was waived by its failure to object to the motion.

The Commission found that Schackney's injuries arose out of and in the course of his employment with McLean Trucking. The Commission's determination of factual issues, including the resolution of conflicting medical evidence, and the credibility and weight of testimony, will not be disturbed unless against the manifest weight of the evidence. (*Hart Carter Co. v. Industrial Com.* (1982), 89 Ill. 2d 487.) We cannot say that the Commission's decision was contrary to the manifest weight of the evidence.

McLean Trucking argues, too, that the Commission should not have awarded the claimant compensation for physical, mental, and vocational rehabilitative training under section 8(a) of the Act. Both Dr. Greenberg and Dr. Buckingham testified as to the claimant's inability to perform physically demanding labor. The claimant testified that he was 59 years old, has a seventh-grade education, and has worked as a truck driver since the age of 17. We consider that the Commission had sufficient evidence before it to direct that an arbitrator conduct a hearing on the question of rehabilitation.

McLean Trucking complains that there has not been

any evidence presented concerning the type of rehabilitation best suited to the claimant and that there has not yet been a decision regarding whether the claimant is permanently disabled. We consider that the Industrial Commission remanded the cause for a hearing to determine what type of treatment and training for rehabilitation purposes is necessary and appropriate. The necessity for and details of the specific character and extent of rehabilitation have been left for future determination, and we consider that "any objections that [the employer] may have to any particular type of rehabilitation on the ground that it is unnecessary can be advanced at a future hearing." (*Kropp Forge Co. v. Industrial Com.* (1981), 85 Ill. 2d 226, 230.) As this court noted in *Hunter Corp. v. Industrial Com.* (1981), 86 Ill. 2d 489, trained rehabilitation personnel can be called as witnesses so that any vocational rehabilitation award that may be made will be appropriate. Considering the Commission's heavy responsibilities, it was not inappropriate for it to refer the question to an arbitrator for the hearing.

That there has not yet been a ruling on whether the claimant's disability is permanent does not preclude an award of the costs of rehabilitative training. What we said in *Hunter* may apply here: "Until the claimant has completed a prescribed rehabilitation program, the issue of the extent of permanent disability cannot be determined." 86 Ill. 2d 489, 501.

For the reasons given, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*